J. RUSSELL CUNNINGHAM, State Bar #130578
J. LUKE HENDRIX, State Bar #271424
DAVID R. WIKSELL, State Bar #272490
DESMOND, NOLAN, LIVAICH & CUNNINGHAM
1830 15th Street
Sacramento, California 95811
Telephone: (916) 443-2051
Facsimile: (916) 443-2651

Attorneys for Susan K. Smith,
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re:

LLOYD T. KEARNS and
DORIS T. KEARNS,

Debtors.

Case No. 10-40570-C-7
Chapter 7

DCN: DNL-6

Date: November 15, 2011
Time: 9:30 a.m.
Place: 501 I Street, 6th Floor
Courtroom 35; Dept. C
Sacramento, CA 95814

### EXHIBITS TO THE MOTION TO SELL 1.25% TIC INTEREST

Attorney, J. Russell Cunningham for Chapter 7 Trustee Susan K. Smith, submits the following exhibits:

| EXHIBIT | DESCRIPTION | PAGE NO. |
|---|---|---|
| A | Tenants in Common Agreement | 2 - 10 |
| B | TIC Ownership Contact List | 11 |
| C | Email Messages to Owners | 12 - 13 |
| D | Sale Agreement | 14 - 15 |

Dated: October 14, 2011

DESMOND, NOLAN, LIVAICH & CUNNINGHAM

By: _____
J. RUSSELL CUNNINGHAM
Attorneys for Susan K. Smith, Chapter 7 Trustee

1



Bk Vol Pg
06027022 OPR 3004 366

GF # 06K07090 WR3

RECORDING REQUESTED BY  )
WHEN RECORDED MAIL TO:  )
                        )
                        )
University Heights II San Marcos Acquisitions, LP  )    Return to: WR-3
c/o Evergreen Realty Group, LLC  )                      Republic Title of Texas, Inc.
225 South Lake Avenue, Suite 630  )                     2626 Howell Street, 10th Floor
Pasadena, California 91101  )                           Dallas, TX 75204
Attention: Mr. Luke V. McCarthy  )

---

Above Space for Recorder's Use

## TENANTS IN COMMON AGREEMENT

This TENANTS IN COMMON AGREEMENT ("Agreement") is made and effective as of the date of recordation hereof, by and among University Heights II San Marcos Acquisitions, LP, a Delaware limited partnership ("Acquisitions"), and University Heights II San Marcos Investors, LP, a Delaware limited partnership (together with any other persons or parties who acquire an interest and assume the rights and obligations hereunder by written instrument, each sometimes referred to as a "Tenant in Common" or collectively as the "Tenants in Common"), with reference to the facts set forth below.

### RECITALS

A. The Tenants in Common own real property and improvements thereon, including University Heights II San Marcos Apartments, in San Marcos, Texas, as more particularly described in Exhibit "B" attached hereto and incorporated herein ("Property").

B. The Tenants in Common desire to enter into this Agreement to (a) provide for the orderly administration of their rights and responsibilities as to each other and as to others and (b) delegate authority and responsibility for the intended further operation and management of the Property.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained in this Agreement and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties agree as set forth below.

1. **Nature of Relationship Between Co-Tenants**.

    1.1 **Tenants in Common Relationship; No Partnership**. The Tenants in Common each shall hold their respective undivided tenancy in common interests in the Property (the "Interests") as tenants-in-common. The Tenants in Common do not intend by this Agreement to create a partnership or joint venture among themselves, but merely to set forth the terms and conditions upon which each of them shall hold their respective Interests. In addition, the Tenants in Common do not intend to create a partnership or joint venture with the Property Manager (as defined below). Therefore, each Tenant in Common hereby elects to be excluded from the provisions of Subchapter K of Chapter 1 of the Internal Revenue Code of 1986, as amended (the "Code"), with respect to the tenancy in common ownership of the Property. The exclusion elected by the Tenants in Common hereunder shall commence with the execution of this Agreement.

    1.2 **Reporting as Direct Owners and Not a Partnership**. Each Tenant in Common hereby covenants and agrees to report on such Tenant in Common's respective federal and state income tax returns all items of income, deduction and credits that result from its Interests. All such reporting shall be consistent with the exclusion of the Tenants in Common from Subchapter K of Chapter 1 of the Code, commencing with the first taxable year following the execution of this Agreement. Further, each Tenant in Common covenants and agrees not

1

Exhibit A  2

to notify the Commissioner of Internal Revenue that it desires that Subchapter K of Chapter 1 of the Code apply to the Tenants in Common.

   1.3  **Indemnity.** Each Tenant in Common hereby agrees to indemnify, protect, defend and hold the other Tenants in Common free and harmless from all costs, liabilities, tax consequences and expenses (for example, taxes, interest and any penalties), including, without limitation, attorneys' fees and costs, which may result from any Tenant in Common so notifying the Commissioner in violation of this Agreement or otherwise taking a contrary position on any tax return, report or other document.

   1.4  **No Agency.** No Tenant in Common is authorized to act as agent for, to act on behalf of, or to do any act that will bind, any other Tenant in Common, or to incur any obligations with respect to the Property.

   2.  **Management.** Concurrently with the acquisition of the Property, the Tenants in Common will enter into a Property Management Agreement (the "Property Management Agreement") with Evergreen Realty Advisors, Inc., a California corporation (the "Property Manager"). Pursuant to the Property Management Agreement, the Property Manager shall be the sole and exclusive manager of the Property to act on behalf of the Tenants in Common with respect to the management, operation, maintenance and leasing of the Property during the term of the Property Management Agreement. The Property Management Agreement hereby is ratified and reconfirmed by the Tenants in Common, and all of the terms, covenants and conditions of the Property Management Agreement are hereby incorporated herein as if set forth in full herein.

   3.  **Income and Liabilities.** Except as otherwise provided herein and in the Property Management Agreement, each of the Tenants in Common shall be entitled to all benefits and obligations of ownership of the Property. Accordingly, each of the Tenants in Common shall (a) be entitled to all benefits of ownership of the Property, on a gross and not a net basis, including, without limitation, all items of income, revenue and proceeds from sale or refinance or condemnation of the Property, in proportion to their respective Interests, and (b) bear, and shall be liable for, payment of all expenses of ownership of the Property, on a gross and not a net basis, including by way of illustration, but not limitation, all operating expenses and expenses of sale or refinancing or condemnation, in proportion to their respective Interests; except for such amounts as may be reasonably determined by the Property Manager to be retained for reserves or improvements in accordance with the Property Management Agreement.

   4.  **Co-Tenant's Obligations.** The Tenants in Common each agree to perform such acts as may be reasonably necessary to carry out the terms and conditions of this Agreement, including, without limitation:

   4.1  **Documents.** Executing documents required in connection with a sale or refinancing of the Property approved by the Tenants in Common in accordance with Section 5 below and such additional documents as may be required under this Agreement or may be reasonably required to effect the intent of the Tenants in Common with respect to the Property, the Property Management Agreement or any loans encumbering the Property.

   4.2  **Additional Funds.** Each Tenant in Common will be responsible for a pro rata share (based on each Tenant in Common's respective Interests, except as otherwise provided in the Property Management Agreement) of any future cash needed for any purpose in connection with the ownership, operation and maintenance of the Property as determined by the Property Manager pursuant to the Property Management Agreement or as required by any loan secured by the Property. In addition to the foregoing, in the event that any lender under financing secured by the Property elects to pursue one or more, but not all, of the Tenants in Common based on the joint and several liability of the Tenants in Common under such financing, then any Tenants in Common that paid (either in cash or through foreclosure of its Interest) in excess of its allocable share of the financing shall be entitled to reimbursement by the remaining Tenants in Common for any excess share paid by such Tenant in Common. Further, any Tenant in Common who breaches any of the recourse exceptions to the non-recourse nature of any such financing shall be liable to reimburse Acquisitions, any Affiliate of Acquisitions or any other Tenant in Common (or party(ies) related thereto or owner(s) thereof) for any amounts paid by such other party (or if such other party likewise was responsible for such breach, then such Tenant in Common shall pay an amount equal to its allocable share thereof). To the extent any Tenant in Common fails to pay any such funds within fifteen (15) days after the

Bk     Vol    Pg
06027022 OPR   2004   368

Property Manager delivers notice that such additional funds are required, any other Tenant(s) in Common may loan any such funds to the nonpaying Tenant(s) in Common, who shall be liable on a fully recourse basis to repay the paying Tenant(s) in Common the amount of any such loan plus interest thereon at the rate of fourteen percent (14%) per annum (but not more than the maximum rate allowed by law) within thirty one (31) days of funding the loan. In addition, the Property Manager is hereby authorized and directed to pay the Tenant(s) in Common entitled to reimbursement the sum loaned (with interest thereon as provided above) out of future cash from operations or from the sale or refinancing of the Property or other distributions otherwise due the nonpaying Tenant(s) in Common pursuant to the Property Management Agreement. The remedies against a nonpaying Tenant in Common provided for herein are in addition to any other remedies that may otherwise be available, including by way of illustration, but not limitation, the right to obtain a lien against the Interests of the nonpaying Tenant in Common to the extent allowed by law and by any third party financing secured by the Property. By executing this Agreement, each Tenant in Common agrees (i) that any such short term loan will be made on a fully recourse basis, (ii) if such Tenant in Common is an entity that is, for federal tax purposes, disregarded, such loan shall be recourse to the owners of such disregarded entity, and (iii) to repay such loan within thirty-one (31) days of funding.

5.   Sale or Encumbrance of Property.

    5.1    Approval. The creation of any loan encumbering the Property, or otherwise with respect to the Property, the consummation of any sale of the Property to third party purchasers, and any other material decision regarding the Property, or any loan that would affect the interest of any other Tenants in Common therein, shall be subject to the prior unanimous approval by the Tenants in Common. To the extent that University Heights II San Marcos Investors, LP is a Tenant in Common under this Agreement, it hereby covenants, for the benefit of the other Tenants in Common, to abide by, and enforce, any restrictions or limitations contained in its organizational documents that restrict, or limit, the rights of certain of its limited partners or its general partner to vote on certain matters affecting the Property. The Tenants in Common, by their execution or assumption hereof, shall be deemed to have approved any existing financing affecting the Property.

    5.2    Distribution of Loan or Sales Proceeds. Notwithstanding any other provisions of this Agreement, proceeds of a loan or sale shall be distributed at the closing of the loan or the sale as set forth below.

        5.2.1    To the extent necessary, the proceeds first shall be used to pay in full any loans encumbering title to the Property.

        5.2.2    To the extent necessary, the proceeds next shall be used to pay in full any unsecured loans made to the Tenants in Common with respect to the Property.

        5.2.3    The proceeds next shall be used to pay all outstanding costs and expenses incurred in connection with the holding, marketing and sale of the Property.

        5.2.4    Any proceeds remaining shall be paid to each Tenant in Common in accordance with their respective Interests as provided in Section 3 above.

    5.3    Repurchase Option. In the event that the Tenants in Common are unable to obtain unanimous approval of any decision requiring unanimity (each, a "Material Decision"), but at least 60% of the Tenants in Common vote in favor of such action, then the Tenants in Common voting in favor of the action (the "Approving Owners"), at their election, may purchase the Interests held by the other Tenants in Common (the "Dissenting Owners") for the Fair Market Value (as defined in Section 10 hereof) of the Dissenting Owners' Interests, by giving notice to the Dissenting Owners within ten (10) days following the failure to obtain a unanimous vote in favor of the Material Decision. In the event that the Approving Owners wish to acquire the Dissenting Owners' Interests, each Approving Owner shall be entitled to purchase its prorata percentage of the Dissenting Owners' Interests; provided, however, if any Approving Owner declines to acquire its prorata percentage pursuant to this paragraph, then the other Approving Owners may elect to acquire the balance of the Dissenting Owners' Interests. If for any reason the Approving Owners do not elect to purchase 100% of the Dissenting Owners' Interests, then Acquisitions or one of Acquisitions' Affiliates or a third party designee thereof may acquire such

remaining Interests for its own account as long as it supports the Material Decision favored by the Approving Owners in the original vote. The Fair Market Value purchase price payable to the Dissenting Owners for their Interests shall be as mutually agreed by the Approving Owners and the Dissenting Owners; provided, however, if the Approving Owners and the Dissenting Owners are unable to agree on the Fair Market Value within ten (10) days following the Approving Owners' election to purchase, then the Fair Market Value shall be determined by the arbitration method described in Section 10 hereof.

6. Possession. The Tenants in Common intend to lease the Property at all times. Accordingly, no Tenant in Common shall have the right to occupy or use the Property at any time during the term of this Agreement.

7. Transfer or Encumbrance. Except as specifically provided in this Agreement and subject to compliance with applicable securities laws and to any loan (and associated loan agreement and documents) secured by the Property, each Tenant in Common may sell, transfer, convey, pledge, encumber or hypothecate the Interests or any part thereof, provided that (a) any transferee shall take such Interests subject to this Agreement and the Property Management Agreement, (b) the transferor and transferee shall execute and cause to be recorded an assignment and assumption agreement whereby (i) transferor assigns to transferee, to the extent of the Interests being transferred, all of its right, title and interest in and to this Agreement and the Property Management Agreement; and (ii) transferee assumes and agrees to perform faithfully and to be bound by all of the terms, covenants, conditions, provisions and agreements of this Agreement and the Property Management Agreement with respect to the Interests to be transferred and (c) such transferor and transferee shall execute and cause to be recorded any related loan assumption agreements required by the lender under any financing secured by the Property. Upon execution and recordation of such assumption agreements, the transferee shall become a party to this Agreement and the Property Management Agreement and any such financing without further action by the other Tenants in Common.

8. Right of Partition. The Tenants in Common agree that any Tenant in Common (and any of its successors-in-interest) shall have the right, while this Agreement remains in effect, to have the Property partitioned, and to file a complaint or institute any proceeding at law or in equity to have the Property partitioned in accordance with, and to the extent provided by, applicable law. The Tenants in Common acknowledge and agree that partition of the Property may result in a forced sale by all of the Tenants in Common. To avoid the inequity of a forced sale and the potential adverse effect on the investment by the other Tenants in Common, the Tenants in Common agree that, as a condition precedent to filing a partition action, the Tenant in Common intending to file such action shall follow the buy-sell procedure set forth in Section 10.

9. Bankruptcy. To avoid the inequity of a forced sale and the potential adverse effect on the investment of the other Tenants in Common, the Tenants in Common agree that, as a condition precedent to entering into this Agreement, the Tenant in Common causing an Event of Bankruptcy (as defined below) shall follow the buy-sell procedure set forth in Section 10. The Tenants in Common agree that the following shall constitute an "Event of Bankruptcy" with respect to any Tenant in Common (and in any of its successors-in-interests): if a receiver, liquidator or trustee is appointed for any Tenant in Common, if any Tenant in Common becomes insolvent, makes an assignment for the benefit of creditors or admits in writing its inability to pay its debts generally as they become due, if any petition for bankruptcy, reorganization, liquidation or arrangement pursuant to federal bankruptcy law, or similar federal or state law shall be filed by or against, consented to, or acquiesced in by, any Tenant in Common; provided, however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by such Tenant in Common then, upon the same not being discharged, stayed or dismissed within thirty (30) days thereof.

10. Buy-Sell Procedure. Prior to the filing of a partition action in accordance with Section 8 or upon the occurrence of an Event of Bankruptcy in accordance with Section 9, the Tenant in Common filing such action or the subject of the Event of Bankruptcy (hereinafter, "Seller") shall first make a written offer ("Offer") to sell its undivided interest to the other Tenants in Common at a price equal to (a) the Fair Market Value (as defined below) of Seller's undivided interest minus (b) Seller's proportionate share of any selling, prepayment or other costs that would apply in the event the Property was sold on the date of the offer. The other Tenants in Common shall be entitled to purchase a portion of the selling Tenant in Common's interest in proportion to their undivided interest in

5

Bk      Vol    Pg
06027022 OPR   3004    370

the Property. In the event any Tenant in Common elects not to purchase its share of the selling Tenant in Common's interest, the other Tenants in Common shall be entitled to purchase additional interests based on their undivided interest in the Property. "Fair Market Value" shall mean the fair market value of Seller's undivided interest in the Property (reduced by liabilities secured by the Property or liabilities taken subject to) on the date the Offer is made as determined in accordance with the procedures set forth below. Each of the other Tenants in Common shall have twenty (20) days after delivery of the Offer to accept the Offer. If any or all of the other Tenants in Common (all Tenants in Common electing to accept the Offer, "Purchaser") accept the Offer, Seller and Purchaser shall commence negotiation of the Fair Market Value within fifteen (15) days after the Offer is accepted. The Tenants in Common constituting Purchaser shall appoint a single Tenant in Common (the "Purchaser Representative") to negotiate the Fair Market Value with Seller, based on the average of all proposals received by the Purchaser Representative from the Tenants in Common constituting Purchaser (the "Purchaser's Proposal"); provided, however, the Purchaser Representative shall not be authorized to accept a Fair Market Value that is different than the Purchaser's Proposal without the approval of a majority of the Tenants in Common constituting Purchaser. If the parties do not agree, after good faith negotiations, within ten (10) days, then each party shall submit to the other a proposal containing the Fair Market Value the submitting party believes to be correct ("Proposal"); provided, however, that if Purchaser consists of more than one person or party, then Purchaser shall submit the Purchaser's Proposal through the Purchaser Representative. If either Purchaser or Seller fails to timely submit a Proposal, the other party's submitted proposal shall determine the Fair Market Value. If both Purchaser and Seller timely submit Proposals, then the Fair Market Value shall be determined by final and binding arbitration in accordance with the procedures set forth below. Purchaser (acting through the Purchaser Representative) and Seller shall meet, at a mutually agreeable location, within seven (7) days after delivery of the last Proposal (or if no mutual agreement as to time or location can be obtained, then at the Property, at noon on the seventh day after delivery of the last Proposal) and make a good faith attempt to mutually appoint a certified MAI real estate appraiser who shall have been active full-time over the previous five (5) years in the appraisal of comparable properties located in the County or City in which the Property is located to act as the arbitrator. If Purchaser and Seller are unable to agree upon a single arbitrator, then Purchaser (acting through the Purchaser Representative) and Seller each, within five (5) days after the meeting, shall select an arbitrator that meets the foregoing qualifications. The two (2) arbitrators so appointed, within fifteen (15) days after their appointment, shall appoint a third arbitrator meeting the foregoing qualifications; provided, however, if one party fails to appoint an arbitrator in such period, then the one appointed arbitrator shall make such determination itself without the need for an additional, or third, arbitrator to be appointed or chosen. The determination of the arbitrator(s) shall be limited solely to the issue of whether Seller's or Purchaser's Proposal most closely approximates the fair market value. The decision of the single arbitrator or of the arbitrator(s) shall be made within thirty (30) days after the appointment of a single arbitrator or the third arbitrator, as applicable. The arbitrator(s) shall have no authority to create an independent structure of fair market value or prescribe or change any or several of the components or the structure thereof; the sole decision to be made shall be which of the parties' Proposals most closely corresponds to the fair market value of the Property. The decision of the single arbitrator or majority of the three (3) arbitrators shall be binding upon Purchaser and Seller. If Purchaser or Seller fails to appoint an arbitrator within the time period specified above, the arbitrator appointed by one of them shall reach a decision that shall be binding upon the parties. The cost of the arbitrators shall be paid equally by Seller and Purchaser. The arbitration shall be conducted in the Austin metropolitan area, Texas, in accordance with applicable Texas law, as modified by this Agreement. The parties agree that Federal Arbitration Act, Title 9 of the United States Code, shall not apply to any arbitration hereunder. The parties shall have no discovery rights in connection with the arbitration. The decision of the arbitrator(s) may be submitted to any court of competent jurisdiction by the party designated in the decision. Such party shall submit to the applicable court having subject matter jurisdiction a form of judgment incorporating the decision of the arbitrator(s), and such judgment, when signed by a judge of such court, shall become final for all purposes and shall be entered by the clerk of the court on the judgment roll of the court. If either Purchaser or Seller refuses to arbitrate an arbitrable dispute and the party demanding arbitration obtains a court order directing the other to arbitrate, the party demanding arbitration shall be entitled to all of its reasonable attorneys' fees and costs in obtaining such order, regardless of which party ultimately prevails in the matter. **BY EXECUTING THIS AGREEMENT, EACH TENANT IN COMMON AGREES TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY TEXAS LAW AND EACH TENANT IN COMMON KNOWINGLY GIVES UP ANY RIGHTS IT MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY EXECUTING THIS**

AGREEMENT EACH TENANT IN COMMON GIVES UP ITS JUDICIAL RIGHTS TO APPEAL. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF TEXAS LAW. EACH TENANT IN COMMON'S AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. Once the Fair Market Value is determined, the Purchaser shall be obligated to acquire the Seller's Interest and, in the event more than one Tenant in Common constitutes Purchaser, then each such Tenant in Common shall acquire a portion of such Interest equal to the percent such Tenant in Common's existing Interest constitutes of the total Interests held by the Purchasers collectively or such other percentage approved by the parties constituting Purchaser. The closing of the purchase shall occur at a mutually agreeable title company where the Property is located within thirty (30) days from the date a Fair Market Value is determined, whether by agreement or arbitration. Closing costs and prorations shall be allocated as is standard practice where the Property is located.

11. **General Provisions.**

    11.1 **Mutuality; Reciprocity; Runs With the Land.** All provisions, conditions, covenants, restrictions, obligations and agreements contained herein or in the Property Management Agreement are made for the direct, mutual and reciprocal benefit of each and every part of the Property; shall be binding upon and shall inure to the benefit of each of the Tenants in Common and their respective heirs, executors, administrators, successors, assigns, devisees, representatives, lessees and all other persons acquiring any undivided interest in the Property or any portion thereof whether by operation of law or any manner whatsoever (collectively, "Successors"); shall create mutual, equitable servitudes and burdens upon the undivided interest in the Property of each Tenant in Common in favor of the interest of every other Tenant in Common; shall create reciprocal rights and obligations between the respective Tenants in Common, their interests in the Property, and their Successors; and shall, as to each of the Tenants in Common and their Successors operate as covenants running with the land, for the benefit of the other Tenants in Common pursuant to applicable law. It is expressly agreed that each covenant contained herein or in the Property Management Agreement (i) is for the benefit of and is a burden upon the undivided interests in the Property of each of the Tenants in Common, (ii) runs with the undivided interest in the Property of each Tenant in Common and (iii) benefits and is binding upon each Successor owner during its ownership of any undivided interest in the Property, and each owner having any interest therein derived in any manner through any Tenant in Common or Successor. Every person or entity who now or hereafter owns or acquires any right, title or interest in or to any portion of the Property is and shall be conclusively deemed to have consented and agreed to every restriction, provision, covenant, right and limitation contained herein or in the Property Management Agreement, whether or not such person or entity expressly assumes such obligations or whether or not any reference to this Agreement or the Property Management Agreement is contained in the instrument conveying such interest in the Property to such person or entity. The Tenants in Common agree that, subject to the restrictions on transfer contained herein, any Successor shall become a party to this Agreement and the Property Management Agreement upon acquisition of an undivided interest in the Property as if such person was a Tenant in Common initially executing this Agreement.

    11.2 **Binding Arbitration.** Any controversy arising out of or related to this Agreement or the breach thereof or an investment in the interests shall be settled by arbitration in the Austin metropolitan area, in accordance with the rules of The American Arbitration Association, and judgment entered upon the award rendered may be enforced by appropriate judicial action pursuant to Texas law. The arbitration panel shall consist of one member, which shall be the mediator if mediation has occurred or shall be a person agreed to by each party to the dispute within 30 days following notice by one party that he desires that a matter be arbitrated. If there was no mediation and the parties are unable within such 30 day period to agree upon an arbitrator, then the panel shall be one arbitrator selected by the Austin, Texas office of The American Arbitration Association, which arbitrator shall be experienced in the area of real estate and limited partnerships and who shall be knowledgeable with respect to the subject matter area of the dispute. The losing party shall bear any fees and expenses of the arbitrator, other tribunal fees and expenses, reasonable attorney's fees of both parties, any costs of producing witnesses and any other reasonable costs or expenses incurred by him or the prevailing party or such costs shall be allocated by the arbitrator. The arbitration panel shall render a decision within thirty (30) days following the close of presentation by the parties of their cases and any rebuttal. The parties shall agree within thirty (30) days following selection of the arbitrator to any prehearing procedures or further procedures necessary for the arbitration to proceed, including

Bk      Vol     Pg
05027022 OPR   3004    372

interrogatories or other discovery; provided, in any event each Tenant in Common shall be entitled to discovery in accordance with Texas law.

11.3     Attorneys' Fees.  If any action or proceeding is instituted between all or any of the Tenants in Common arising from or related to or with this Agreement, the Tenant in Common or Tenants in Common prevailing in such action or arbitration shall be entitled to recover from the other Tenant in Common or Tenants in Common all of its or their costs of action or arbitration, including, without limitation, reasonable attorneys' fees and costs as fixed by the court or arbitrator therein.

11.4     Entire Agreement.  This Agreement, together with the Property Management Agreement, constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and all prior and contemporaneous agreements, representations, negotiations and understandings of the parties hereto, oral or written, are hereby superseded and merged herein.

11.5     Governing Law.  This Agreement shall be governed by and construed under the internal laws of the State of Texas without regard to choice of law rules.

11.6     Modification.  No modification, waiver, amendment, discharge or change of this Agreement shall be valid unless the same is in writing and signed by the party against which the enforcement of such modification, waiver, amendment, discharge or change is or may be sought. The assumption of a new Tenant in Common of this Agreement through the acquisition of an undivided interest in the Property, whether pursuant to the execution of a new Tenants in Common Agreement with identical terms as this Agreement, the execution of a counterpart of this Agreement or the execution of an assignment and assumption instrument applicable to this Agreement, shall not constitute a modification of this Agreement requiring the consent to, or execution of, such instrument by the other Tenants in Common under this Agreement.

11.7     Notice and Payments.  Any notice to be given or other document or payment to be delivered by any party to any other party hereunder may be delivered in person, or may be deposited in the United States mail, duly certified or registered, return receipt requested, with postage prepaid, or by Federal Express or other similar overnight delivery service, and addressed to the Tenants in Common at the addresses specified below or in any instrument effecting an assignment and assumption hereof. Any party hereto from time to time, by written notice to the others, may designate a different address that shall be substituted for the one above specified. Unless otherwise specifically provided for herein, all notices, payments, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given and received (i) upon personal delivery, or (ii) as of the third business day after mailing by United States registered or certified mail, return receipt requested, postage prepaid, addressed as set forth above, or (iii) the immediately succeeding business day after deposit with Federal Express or other similar overnight delivery system.

11.8     Successors and Assigns.  All provisions of this Agreement shall inure to the benefit of and shall be binding upon the successors-in-interest, assigns and legal representatives of the parties hereto.

11.9     Term.  This Agreement shall commence as of the date of recordation and shall terminate at such time as the Tenants in Common or their successors-in-interest or assigns no longer own the Property as tenants-in-common. In no event shall this Agreement continue beyond December 31, 2030.

11.10    Waivers.  No act of any Tenant in Common shall be construed to be a waiver of any provision of this Agreement, unless such waiver is in writing and signed by the Tenant in Common affected. Any Tenant in Common hereto may specifically waive any breach of this Agreement by any other Tenant in Common, but no such waiver shall constitute a continuing waiver of similar or other breaches.

11.11    Counterparts.  This Agreement may be executed in counterparts, each of which, when taken together, shall be deemed one fully executed original.

Bk    Vol   Pg
027022 OPR  3004  373

11.12 Severability. If any portion of this Agreement shall become illegal, null or void or against public policy, for any reason, or shall be held by any court of competent jurisdiction to be illegal, null or void or against public policy, the remaining portions of this Agreement shall not be affected thereby and shall remain in full force and effect to the fullest extent permissible by law.

11.13 Securities Laws. THE UNDIVIDED INTERESTS IN THE PROPERTY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, NOR APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, OR BY THE SECURITIES REGULATORY AUTHORITY OF ANY STATE. NOR HAS ANY COMMISSION OR AUTHORITY PASSED UPON OR ENDORSED THE MERITS OF THE OFFERING OR THE ACCURACY OR ADEQUACY OF ANY DISCLOSURE MADE IN CONNECTION THEREWITH. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. THE INTERESTS MAY NOT BE RESOLD WITHOUT REGISTRATION UNDER THE SECURITIES ACT OF 1933 AND APPLICABLE STATE SECURITIES LAWS OR EXEMPTION THEREFROM.

11.14 Time is of the Essence. Time is of the essence of each and every provision of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

**TENANTS IN COMMON:**

**UNIVERSITY HEIGHTS II SAN MARCOS ACQUISITIONS, LP,** a Delaware limited partnership

By: University Heights II San Marcos Manager, LLC, a Delaware limited liability company, its General Partner

By: _/s/ Luke V. McCarthy_
Name: Luke V. McCarthy
Its: Manager

**UNIVERSITY HEIGHTS II SAN MARCOS INVESTORS, LP,** a Delaware limited partnership

By: University Heights II San Marcos Manager, LLC, a Delaware limited liability company, its General Partner

By: _/s/ Luke V. McCarthy_
Name: Luke V. McCarthy
Its: Manager

8

Bk   Vol   Pg
06027022 OPR  3004  374

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of ___Los Angeles___

On ___July 18, 2006___ before me, ___Terry L. Taylor, Notary Public___
      Date                                      Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared ___Luke V. McCarthy___
                                         Name(s) of Signer(s)

☑ personally known to me

☐ (or proved to me on the basis of satisfactory evidence)

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

[Notary Seal: TERRY L. TAYLOR, Commission # 1659215, Notary Public - California, Los Angeles County, My Comm. Expires Apr 18, 2010]

Place Notary Seal Above                   ___Signature___
                                                          Signature of Notary Public

——————————— OPTIONAL ———————————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: ___Tenants in Common Agreement___

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: ___None___

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: ___Luke V. McCarthy___
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☑ Other: ___Manager___

[RIGHT THUMBPRINT OF SIGNER - Top of thumb here]

Signer Is Representing:
___University Heights II___
___San Marcos Acquisitions___

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

[RIGHT THUMBPRINT OF SIGNER - Top of thumb here]

Signer Is Representing: _____

© 2006 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

## University Heights II
### TIC Ownership

| % Own | TIC | Investor Name | Email Address | c/o | Address | City | State | Zip Code | Primary Phone | Secondary Phone |
|---|---|---|---|---|---|---|---|---|---|---|
| 3.1800 | 1 | Helena Gaynor | mhelenagaynor@yahoo.com | | 24147 Del Monte Drive, Apt. 298 | Valencia | CA | 91355 | (818) 389-4691 | |
| 6.1500 | 2 | John & Olga Kelly | jjkelly@comcast.net | | 20114 Glasgow Drive | Saratoga | CA | 95070 | (408) 741-0857 | |
| 4.6000 | 3 | Barbara Bonnet | | | 3241 71st Street | East Elmhurst | NY | 11370 | (718) 651-4087 | |
| 3.2000 | 4 | Robert J. Rohrer | rohrerhomes@yahoo.com | | 2304 43rd Street East | Puyallup | WA | 98374 | (253) 848-7781 | |
| 3.5500 | 5 | Curtis C Higgins | juspivey2@msn.com | | P.O. Box 2490 | Payson | AZ | 85547 | (928) 474-8833 | |
| 2.6000 | 6 | Gene Burchett | geneburchett@gmail.com | | 880 Salmon Falls Road | El Dorado Hills | CA | 95762 | (916) 939-7044 | |
| 4.0000 | 7 | Raymond P. & Ann Cheung | anncheung.mimi@gmail.com | | 19301 Tomlee Avenue | Torrance | CA | 95002 | (310) 370-9961 | |
| 2.1500 | 8 | Laurel Pathman | laurelpathman@netscape.net | | P.O. Box 373 | Alviso | CA | 95002 | (408) 981-6090 | |
| 2.3000 | 9 | Priscilla Sorknes (Grefsrud) | psorknes@aol.com | | 4115 37th Avenue South | Minneapolis | MN | 55406 | (612) 202-0639 | |
| 5.6000 | 10 | Robert A. Johnston | bobjhnstn@msn.com | | 69475 Deer Ridge Road | Sisters | OR | 97759 | (541) 549-8099 | |
| 2.6000 | 11 | Lawrence Belkin | belkinfo@verizon.net | | 436 N. Braddock Street | Winchester | VA | 22601 | (540) 667-2827 | |
| 2.6000 | 12 | Krishna Patel | patel.kris@att.net | | 440 Campana Place | Arroyo Grande | CA | 93420 | (805) 481-8315 | |
| 2.0000 | 13 | Sharon Petrocelli | petrosharon@aol.com | | 3412 E. Date Street | Brea | CA | 92823 | (714) 985-1685 | |
| 5.4500 | 14 | William Lester | wwl@lesterlester.com | | 23600 SW Newland Road | Wilsonville | OR | 97070 | (503) 638-4610 | (408) 639-3910 |
| 8.3000 | 15 | Robert McGowan | rdnnew1@sbcglobal.net | | 850 State Street #316 | San Diego | CA | 92101 | (619) 234-7654 | |
| 7.8500 | 16 | Elizabeth McGowan | rdnnew1@sbcglobal.net | | 6425 Caminito Northland | La Jolla | CA | 92037 | (858) 551-0816 | |
| 1.2500 | 17 | Lloyd & Doris Kearns | kearnsabundance@aol.com | | 920 1st Street | Woodland | CA | 95695 | (530) 662-6104 | |
| 3.4941 | 18 | Charles Brewer Fiscus | bufordjohnson@pwfinancial.net | | 2226 Midvale Avenue | Los Angeles | CA | 90064 | (310) 475-5148 | |
| 6.9500 | 19 | Timothy Smith | tsmith@tsmrinc.com | | 1320 Lorain Road | San Marino | CA | 91108 | (626) 282-1283 | |
| 1.0000 | 20 | Reid Takahashi | rtak123@yahoo.com | | 3189 Beaudry Terrace | Glendale | CA | 91208 | (818) 330-9968 | |
| 6.4500 | 21 | Richard & Joan Steussy | steuss@aol.com | | 334 Atherton Avenue | Novato | CA | 94945 | (415) 897-1457 | |
| 3.1500 | 22 | Sam & Lily Ching | marilynn.ito@sbcglobal.net | Marilynn Ito | 4129 Ventura Canyon Avenue | Sherman Oaks | CA | 91423 | (818) 784-9776 | (818) 642-1887 |
| 2.5500 | 23 | Donald Snider | elroyds@gmail.com | | 1867 Highway 52 East | Portland | TN | 37148 | (615) 325-0222 | |
| 1.0000 | 24 | Richard Hingley | Hingley@att.net | | 1535 W Walnut Street | Stockton | CA | 95203 | (209) 466-6069 | (209) 369-8870 |
| 3.7000 | 25 | Lloyd Randall | lloydotis@comcast.net | | 12969 SW Tearose Way | Tigard | OR | 97223 | (503) 617-4607 | |
| 1.7000 | 26 | Dale Cochran | dmcochran1120@msn.com | | 15315 Monroe Court | Urbandale | IA | 50323 | (515) 987-2455 | |
| 1.7000 | 27 | Jeannene Cochran | dmcochran1120@msn.com | | 15315 Monroe Court | Urbandale | IA | 50323 | (515) 987-2455 | |
| 0.9259 | 0 | | | | | | | | | |
| | | Phyllis Rothschild | pqr440@aol.com | | 440 Cove Lane | Wilmette | IL | 60091 | (312) 427-0336 | |
| | | Desmond Allen | | | 40-1 Bergen Ridge Road | N. Bergen | NJ | 07047 | (201) 210-3358 | |
| | | Robert George Rikeard | rhaydel@calton.com | | 133 Dogwood Trail | Leesburg | FL | 34748 | (352) 638-9117 | |
| 100.0000 | | | | | | | | | | |

Exhibit B

# Russell Cunningham

| | |
|---|---|
| **From:** | Susan Smith <sksmith3@earthlink.net> |
| **Sent:** | Friday, September 02, 2011 11:26 AM |
| **To:** | 'Susan Smith'; mhelenagaynor@yahoo.com; jikelly@comcast.net; rohrerhomes@yahoo.com; juspivey2@msn.com; geneburchett@gmail.com; anncheung.mimi@gmail.com; laurelpathman@netscape.net; psorknes@aol.com; bobjhnstn@msn.com; belkinlo@verizon.net; patel.kris@att.net; petrosharon@aol.com; wwl@lesterlester.com; rdmnew1@sbcglobal.net; rdmnew1@sbcglobal.net; kearnsabundance@aol.com; bufordjohnson@pwfinancial.net; tsmith@tsmrinc.com; rtak123@yahoo.com; steuss@aol.com; marilynn.ito@sbcglobal.net; elroyds@gmail.com; Hingley@att.net; lloydotis@comcast.net; dmcochran1120@msn.com; dmcochran1120@msn.com; pgr440@aol.com; Desmond.Allen@nyklogistics.com; ruipple@hotmail.com; rhaydel@calton.com |
| **Cc:** | sobrien@wlfund.com; Russell Cunningham |
| **Subject:** | RE: University Heights II San Marcos TIC 17, LP 1.25% interest |
| **Importance:** | High |

Dear Co-Owners,

This email is a follow-up to my email below in which I am attempting to sell the 1.25% interest in University Heights II San Marcos TIC 17 that belongs to the Bankruptcy Estate of Lloyd and Doris Kearns. I have received an offer of $50,000 to purchase the 1.25% interest and I am inclined to accept it, subject to bankruptcy court approval and overbid. This process will take approximately 45 days. After September 12, 2011 papers will be filed with the bankruptcy court to approve the sale. These papers will be sent to you via email. If you prefer the papers be sent to you via US Mail please provide me with your mailing address.

Thank you.

Susan K. Smith, Trustee
7485 Rush River Drive, Suite 710-218
Sacramento, CA 95831
Telephone: (916) 391-1495
Facsimile: (916) 421-6197
sksmith3@earthlink.net

---

**From:** Susan Smith [mailto:sksmith3@earthlink.net]
**Sent:** Sunday, August 21, 2011 1:36 PM
**To:** 'mhelenagaynor@yahoo.com'; 'jikelly@comcast.net'; 'rohrerhomes@yahoo.com'; 'juspivey2@msn.com'; 'geneburchett@gmail.com'; 'anncheung.mimi@gmail.com'; 'laurelpathman@netscape.net'; 'psorknes@aol.com'; 'bobjhnstn@msn.com'; 'belkinlo@verizon.net'; 'patel.kris@att.net'; 'petrosharon@aol.com'; 'wwl@lesterlester.com'; 'rdmnew1@sbcglobal.net'; 'rdmnew1@sbcglobal.net'; 'kearnsabundance@aol.com'; 'bufordjohnson@pwfinancial.net'; 'tsmith@tsmrinc.com'; 'rtak123@yahoo.com'; 'steuss@aol.com'; 'marilynn.ito@sbcglobal.net'; 'elroyds@gmail.com'; 'Hingley@att.net'; 'lloydotis@comcast.net'; 'dmcochran1120@msn.com'; 'dmcochran1120@msn.com'; 'pgr440@aol.com'; 'Desmond.Allen@nyklogistics.com'; 'ruipple@hotmail.com'; 'rhaydel@calton.com'
**Cc:** 'Susan Smith'; 'sobrien@wlfund.com'
**Subject:** University Heights II San Marcos TIC 17, LP 1.25% interest

Dear Co-owners,

Exhibit C

I am the duly appointed trustee of the Lloyd T. Kearns and Doris T. Kearns bankruptcy case, filed in the U.S. Bankruptcy Court, Eastern District of California, in the Sacramento Division, case no. 10-40570-C-7. Enclosed are copies of my appointment as trustee and notice of the chapter 7 bankruptcy case.

The bankruptcy estate owns the Kearns' 1.25% interest in University Heights II, San Marcos TIC. As trustee, I am must liquidate this interest. If anyone is interested in purchasing this 1.25% interest please contact me at your earliest convenience.

Sincerely,

Susan K. Smith, Trustee
7485 Rush River Drive, Suite 710-218
Sacramento, CA 95831
Telephone: (916) 391-1495
Facsimile: (916) 421-6197
sksmith3@earthlink.net

## SALE AGREEMENT

SUSAN K. SMITH ("Trustee"), in her capacity as trustee for the bankruptcy of LLOYD T. KEARNS and DORIS T. KEARNS (hereinafter collectively "Debtors"), and AMERICAN SPECTRUM REALTY OPERATING PARTNERSHIP, L.P. ("Buyer") recite and agree as follows:

A. The Debtors are the debtors in Bankruptcy Case No. 10-40570-C-7, commenced on August 2, 2010 under Chapter 7. Trustee is the duly appointed trustee for the estate.

B. The estate includes a 1.25% tenant-in-common interest in University Heights II. San Marcos TIC 17, LP ("Subject Property"), the owner of real property in San Marcos, Texas improved by an approximate 183,000 square foot, 202 unit apartment building.

C. Buyer has agreed to buy and Trustee has agreed to sell the Subject Property.

D. Buyer understands and agrees that certain disclosures otherwise required in the sale of real property are not required by Trustee, as a fiduciary administering a bankruptcy estate.

E. Buyer acknowledges that Trustee has made no statements, representations, warranties, written or oral, express or implied, with respect to the physical, legal, economic or other condition of the Subject Property or the suitability of the Subject Property for Buyer's purposes, and by proceeding to closing, Buyer hereby acknowledge that Buyers are familiar with the Subject Property, and have conducted such investigation of the Subject Property as Buyer has deemed necessary and appropriate.

**NOW THEREFORE**, for good and valuable consideration, including the mutual promises recited herein, and subject to Bankruptcy Court approval and overbidding, the parties hereto agree as follows:

1. The purchase price shall be $50,000 payable as follows: (a) a $5,000 deposit that shall be non-refundable in all event except that the Buyer is out bid or this Sale Agreement is not approved by the Bankruptcy Court; and (b) the $45,000 balance within 30 calendar days of entry of the order approving this Sale Agreement. In the event that the Bankruptcy Court approves this Sale Agreement, but the Buyer does not close for any reasons, other than a failure by Trustee to convey the Subject Property, Trustee, as her sole remedy, shall retain the deposit as liquidated damages.

**Exhibit D**

2. Trustee shall convey the estate's interest in the Subject Property to the Buyer, or designee, by quitclaim deed as to real property and bill of sale as to personal property. There shall be no contingencies to the close of escrow. The Buyer shall bear all closing costs, transfer tax, and accrued real property taxes, if any.

3. Trustee may entertain other offers and reserve the right to accept any of them through the conclusion of the hearing.

4. Buyer acknowledges and understands that any disputes related to this transaction shall be decided, if necessary by the Bankruptcy Court for the Eastern District of California (Sacramento Division) only, and no other tribunal. The prevailing party shall be entitled to recover attorney fees and costs.

IN ACCEPTANCE OF WHICH, the parties hereto execute this agreement on the day and year set forth below.

**KEARNS BANKRUPTCY ESTATE**

DATED: ~~September~~ 10/7, 2011

_____
Susan K. Smith, Chapter 7 Trustee

**AMERICAN SPECTRUM REALTY OPERATING PARTNERSHIP, L.P.**

By: American Spectrum Realty, Inc., its General Partner

DATED: ~~September~~ OT 4, 2011

_____
By: ~~Elisa Grainger~~
Its: ~~Chief Accounting Officer~~
William W. Geary, Jr.
OUT to President